**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Foley, <u>et al.</u>     }
                                  }
                                  }     Docket No.  284-12-02
                                  }
                                  }     Vtec
                                  }
                                  }

<u>Decision and Order</u>

Appellants Karen Foley, Johannes Swarts, Katherine Thibault, Andre Thibault, John McCann, Donna McCann, Susan Bradford, Richard Peck, and Donna Williams appealed from a decision of the Zoning Board of Adjustment of the Village of Bradford granting conditional use approval to Appellee-Applicant Peter J. Saladino, Jr. Appellants appeared and represented themselves, with Ms. Foley acting as spokesperson; Appellee-Applicant appeared and represented himself; and the Town did not enter an appearance in this matter. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge; after which Judge Wright took a site visit alone, by agreement of the parties. The parties presented their arguments orally on the record at the hearing. Upon consideration of the evidence, the site visit and the parties= arguments, the Court finds and concludes as follows.

Appellee-Applicant Saladino owns a building and lot in the Bradford Village Historic District and in the Village Residential zoning district. The lot is shown on the zoning permit application as having tax map number 97-283 and as being one acre in size, however, that size applies to the whole L-shaped lot which extends behind the adjacent lot to the north, as may be seen on the tax map in evidence as Exhibit B. The parties agreed at trial that the Saladino parcel is not the parcel marked with the arrow as A subject@ on that tax map, nor is it the entire L-shaped adjacent parcel. Rather, it is the rectangular parcel marked in blue on that map, which amounts to only a portion of the L-shaped parcel (compare Exhibit 9 confirming the shape and measurements of the adjoining properties). It has a dimension of 343.1 feet in depth and 78.5 feet in width across the front lot line, yielding an area of 26,933 square feet, or approximately .62 of an acre.

Appellants own nearby lots in the Historic District. The Historic District lots tend to be narrow and deep, with the nineteenth century historic

homes being placed relatively near the street within each lot. The character of this area is that of an historic village setting, characterized by pedestrian use of a sidewalk in front of the houses, a walkway from the front doors of the houses to the sidewalk, and driveways extending along one side of the houses to parking areas, garages or carriage houses to the rear of the main houses. In the immediate area, only the Saladino property has parking along the driveway along the side of the house.

Directly adjacent to and southerly of the Saladino parcel is the parcel owned by Appellants Foley and Swarts. The Foley/Swarts house is located as close as 9 feet to the Saladino property line. While Appellee-Applicant asserted on his application that as many as seven or eight cars can be parked between the Saladino building and the Foley/Swarts property line, he did not provide a sketch or diagram to show how that number of 10' x 20' parking spaces would fit, without encroaching on the Foley/Swarts property or the street right-of-way, and without impeding use of a driveway along the side of the Saladino building for access to those parking spaces.

Appellee-Applicant has owned his property since 1965. It had two apartments upstairs, and three separate office uses on the ground floor: a dentist= s office, an optometrist= s office, and an osteopath= s office, seeing approximately 50 patients a day among the three practices. There is no question that the daytime traffic generated by these office uses during office hours was greater than the traffic that would be generated by a single residential apartment. The osteopath= s use of the offices ceased by 1980, reducing the number of patients per day to 42; the optometrist= s use of the offices ceased by some time in 1983, reducing the number of patients per day to 30; the dental practice= s use of the offices ceased at some time in 1985, so that the office use of the building was discontinued in 1985. No ground floor use of the building was made until some time in the fall of 2001, when it was remodeled for apartment use and began to be rented out as a third apartment in the building.

As of and after the adoption of the Village Zoning Bylaws in 1983, the property became nonconforming, due to the lack of a sufficient number of parking spaces for the two apartments and the single remaining office use. It also would have become nonconforming as to lot size if it had still had three office uses, but by that time it had been reduced to a single office use on the first floor. The required parking for the residential uses under the 1983 regulations was 4 spaces, plus one space for every employee vehicle in the office and one space for

every 200 square feet of floor area in the office. It was allowed to continue as a grandfathered nonconforming use under ' 4.4 of the Zoning Bylaws, and no permit was required. However, after the nonconforming use of the ground floor had lapsed due to abandonment under ' 4.4.3, any new use proposed for the ground floor, or for the building as a whole, had to meet the zoning regulations.

Thus as of some time in 1986, a year after the abandonment of the first floor office uses, the use of the building was as a duplex residence. Only four parking spaces and 10,000 square feet of lot area were required for this use. As it had sufficient lot area and parking for this duplex use, it became a conforming structure with a conforming use.

In September of 2002, Mr. Saladino applied for a zoning permit to change the ground floor use of the building from A professional office to two apartments.@ In fact, the professional office use of the building had long since lapsed, but in any event the application was referred to the ZBA for its consideration as a conditional use application for a four-apartment building. It is the ZBA= s grant of approval for a three-unit building that is on appeal in the present case. Because Mr. Saladino did not appeal the denial of the fourth unit, only the three-unit proposal can be considered in this appeal.

A multi-family apartment building requires 10,000 square feet of lot area for the first two units, considered together, and 8,000 square feet for each of the successive units. Thus, a three-unit building would require 18,000 square feet of lot area, and this lot has sufficient lot size to support a three unit building.

A three-unit multi-family building requires five parking spaces, each 10' x 20' in size. Room exists on the side of the building for those parking spaces, but the spaces must be laid out to avoid random parking, to avoid one car blocking another, to avoid any cars encroaching on the Foley/Swarts property or the street right-of-way, and to avoid impeding the use of a driveway along the side of the building for access to those parking spaces, in order to meet the conditional use criterion that the proposal not adversely affect the character of the area. Appellee-Applicant is free to propose a fence or landscaping on his side of the property line, to help control and define parking and to help shield the Foley/Swarts house from the headlights, noise and exhaust of his tenants= vehicles, but neither a fence nor landscaping is required under the old regulations. Any new fence

would be governed by the new regulations; we make no ruling in this decision about what kind of approval might be required for it, if any.

Under ' 5.8 of the old regulations, a multi-family building does not require site plan approval. Under ' 6-12(a) of the new regulations it does. Unless the new regulations were proposed for public hearing before September 25, 2002, they do not apply to this application. Therefore this decision cannot address screening of the parking area or of any trash containers.

The proposed three-unit residential use of the building will not adversely affect the capacity of existing or planned community facilities, will not adversely affect traffic on roads or highways in the vicinity, will not adversely affect utilization of renewable energy resources, and will not adversely affect any of the provisions of the old zoning bylaws. With the condition that the five required parking spaces be laid out and defined to avoid random parking, to avoid one car blocking another, to avoid any cars encroaching on the Foley/Swarts property or the street right-of-way, and to avoid impeding the use of a driveway along the side of the building for access to those parking spaces, the proposed three-unit residential use of the building will not adversely affect the character of the area.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that conditional use approval of a three-unit residential building is GRANTED to Appellee-Applicant, subject to the condition that the five required parking spaces be laid out to avoid random parking, to avoid one car blocking another, to avoid any cars encroaching on the Foley/Swarts property or the street right-of-way, and to avoid impeding the use of a driveway along the side of the building for access to those parking spaces.

Dated at Barre, Vermont, this 11th day of August, 2003.

_____
Merideth Wright
Environmental Judge

# Footnotes

[1] Under 24 V.S.A. §4443(d), as amended in 2001, an application must be considered under any newly proposed regulations if the application is filed after the new regulations have been proposed for public hearing, even if they have not yet been adopted. Mr. Saladino's application was filed on September 25, 2002. The new Zoning Bylaws were adopted on March 4, 2003. However, although Appellants argued that the new regulations should be applied, they did not present evidence as to when the new Zoning Bylaws were proposed for public hearing. Accordingly, we will apply the old Zoning Bylaws to this application. If the new zoning bylaws were in fact noticed for public hearing prior to September 25, 2002, the application should have been considered under the new regulations, and Appellants are free to move under V.R.C.P. 59 for a new trial on this basis.